**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | |
| v. | Criminal No. 09-131 (ADC) |
| [1] EDGARDO COLON-LEDEE,<br>Defendant | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION UNDER RULE 29**

TO THE HONORABLE COURT:

COMES NOW the United States of America ("Government" or "United States"), by and through the undersigned attorneys, and very respectfully states and prays as follows:

I.     **Introduction**

On February 8, 2012, a petit jury returned a verdict in an eight-count indictment charging defendant, Edgardo Colon-Ledee ( "Edgardo Colon") and his sister and bankruptcy attorney Astrid Colon-Ledee ("Astrid Colon"), with various bankruptcy related crimes including, concealment of assets belonging to bankruptcy estate,  fraudulent transfers, conspiracy to commit the same, and money laundering,  in violation of Title 18, United States Code, Sections 152(1) and (7); 371; 1956; and 2. See ECF No. 316.  Edgardo Colon was found guilty of Counts One through Seven, which included charges of conspiracy (Count One), fraudulent concealment (Count Two), fraudulent transfers (Counts Three through Six), and money laundering (Count Seven).  See ECF No. 316. Defendant was acquitted of the fraudulent transfer count alleged in Count Eight.  See id. Astrid Colon was convicted of all the counts in which she was charged, specifically, Counts One through Five. See id.

On March 8, 2012, Edgardo Colon filed a written motion pursuant to Fed. Crim. P. Rule 29 for acquittal, alleging that the evidence presented at trial was insufficient to support the conviction. See ECF No. 331.[1]  As set forth below, the United States respectfully submits that there was sufficient evidence to support the convictions for all the counts for which he was found guilty. Moreover, to the extent Edgardo Colon fails to raise any specific arguments as to the sufficiency of the evidence with respect to Counts Two through Six,[2] these arguments should be deemed waived.

## II.    Standard

In addressing a motion under Rule 29, the court must "view the evidence and draw all inferences in a light most favorable to the prosecution." United States v. Benjamin, 252 F.3d 1, 5 (1st Cir. 2001).  See United States v. DiSanto, 86 F.3d 1238, 1246 (1st Cir. 1996); see also, United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996).  Resolving all credibility determinations and evidentiary conflicts in the prosecutions' favor, the court must affirm the conviction if it concludes that "any rational trial of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Blasini-Lluberas, 169 F.3d 57, 62 (1st Cir. 1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  In conducting its evaluation, the court may consider both direct and circumstantial evidence.  See  Benjamin, 252 F. 3d at 5 (citing United States v. Baldyga, 233 F.3d

---

[1] Defendant moved pursuant to Rule 29 after the close of the goverment's case but failed to renew his motion after presenting a stipulation to the jury.  Notwithstanding, a written motion for acquittal after the jury verdict places Defendant in the same position as if he had moved for acquittal at the close of all the evidence.  See Fed. R. Crim. P. 29(c)(3); United States v. Castro-Lara,970 F.2d 976, 980 (1st Cir. 1993).

[2] In the motion for acquittal, Defendant fails to address the conviction in Count Six but includes Count Eight in the heading, the count for which he was acquitted.  Because the arguments as to these particular counts contain generic allegations of insufficiency, these arguments should be considered waived inasmuch as it is impossible to determine which counts Defendant is referring to.  Without waiving any subsequent arguments with respect to Defendant's failure to properly address the counts, the United States will address all the counts for which Defendant was convicted.  See ECF No. 331, at 5; United States v. Lugo-Guerro, 524 F.3d 5, 13 (1st Cir. 2008) (sufficiency of evidence claims not addressed in Rule 29 motion are reviewed on appeal only for "clear and gross" injustice).

674, 678 (1st Cir. 2000)).   Indeed, "[t]he prosecution is entitled to rely, even exclusively, on circumstantial evidence to prove its case, and the proof need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." United States v. Lugo-Guerrero, 524 F.3d 5, 13 (1st Cir. 2008) (internal quotations omitted).

## III.   Summary of Relevant Facts

Viewing the evidence in a light most favorable to the prosecution and verdict rendered, the evidence presented at trial established the following relevant facts.

In 2002, Edgardo-Colon, a practicing plastic surgeon and law school graduate, was facing a large tax debt with the Puerto Rico Department of Treasury, approximately twenty (20) medical malpractice claims (some not covered by his medical malpractice insurance) and other bills.  See Government Exhibit ("GE") 1-2; GE 2 at 46-47.  See also ECF No. 277 at 51-52.  Astrid Colon was his sister, a bankruptcy attorney and from at least August 2002 through January 5, 2007, president of Investments Unlimited, Inc. ("Investments Unlimited"), a corporation wholly owned and controlled by Edgardo Colon.  See GX 1-1; 1-6; 5; 9-1; 23-1; 24.

On August 17, 2002, Edgardo-Colon and Astrid Colon transferred his ocean-front residence and office known as Malaga #1 to Investments Unlimited in satisfaction of a purported debt of $40,000.  See GE 6 & 7.[3]  During this transaction, Astrid Colon drafted and executed the transfer deed representing Investments Unlimited as its president.  See GE 6; ECF No. 277 at 52 to 54.

On May 28, 2003, approximately nine-months after the transfer of Malaga #1 to Investments Unlimited,  Edgardo Colon, represented by Astrid Colon, filed a voluntary petition for individual

---

[3]The property had an outstanding mortgage on it for approximately $700,000.

Chapter 7 bankruptcy, Case No. 03-5547 (GAC), captioned *In re Edgardo Colon-Ledee*, in the United States Bankruptcy Court for the District of Puerto Rico.  See  GX 1-1; 1-2.  Along with the petition, Edgardo-Colon and Astrid-Colon executed and filed the required bankruptcy schedules and statement of financial affairs, but failed to disclose that Edgardo Colon was the owner of Investments Unlimited and Malaga #1.  See GE 1-2.  In addition, in line 10 of the Statement of Financial Affairs, Edgardo Colon failed to disclose that he had transferred Malaga #1 to Investments Unlimited within a year of filing for bankruptcy, as required.  See GE 1-2.

On October 3, 2003, Edgardo Colon and Astrid Colon, in her capacity as bankruptcy attorney, executed and filed an amended petition, amended schedules and amended statement of financial affairs.  See GE 1-3; ECF No. 267 at 47.  In the amended petition and schedules, Edgardo Colon disclosed some additional properties that he owned,[4] but again failed to disclose his ownership of Investments and the pre-petition transfer of Malaga #1 to Investments Unlimited.  See GE 1-3. Instead, Edgardo Colon indicated in his original and amended bankruptcy petition that he rented Malaga #1 from Investments Unlimited.  See GE 1-2; 1-3.

On November 13, 2003, Edgardo Colon appeared at the meeting of creditors held by the Chapter 7 trustee ("Meeting of Creditors" or "341 Meeting"), represented by his attorney (and still president of Investments Unlimited) Astrid Colon.  See GE 2; 9-1.  At the hearing, presided by the Chapter 7 trustee assigned to the case, Wilfredo Segarra ("Segarra"),  Edgardo Colon testified under oath that his amended schedules were correct and that his only relationship with Investments Unlimited was through a rental agreement.  See GE 2 at bates nos. CREDITORS-0054 to 0056.  In

---

[4] The properties he disclosed were encumbered and therefore did not result in any distribution to creditors. See ECF No. 267 at 73.

addition, Edgardo Colon testified that the apartment "belongs to a corporation whose stockholders are people from Chicago." id. Segarra asked if these stockholders were relatives of his which Edgardo Colon answered "No, sir." id.

After the hearing, Astrid Colon submitted to Segarra copies of commercial and residential leases that purported to show that Edgardo Colon was renting Malaga #1 from Investments Unlimited.  See ECF No. 267 at 73; GE 2A and 2B.

Based on the representations contained in the petitions, schedules and testimony at the 341 hearing, and wholly unaware of the pre-petition transfer, Segarra determined that there were no assets to distribute or sell to satisfy any of the creditors in this case and filed a Report of No Distribution on December 28, 2004.  See ECF No. 267 at 78; GE 1-1, Docket No. 42.

Despite what was represented to Segarra and the bankruptcy court, there was ample direct and circumstantial evidence at trial that Edgardo Colon was the sole owner and exercised control over Investments Unlimited.  Bank records established that Edgardo Colon was the sole signatory for commercial account number 1160 in the name of Investments Unlimited at R&G Premier Bank ("R&G Bank").  See GE 23-1.   In addition, in the account opening documents provided to R&G Bank in March 2002 Edgardo Colon described himself as the owner of Investments Unlimited.  See id.  Furthermore, during the pendency of the bankruptcy case, on December 9, 2006, Edgardo Colon purchased a vehicle on  behalf of Investments Unlimited, paying $23,151 of the $23,901 purchase price in cash.  See GE 24.  In the form 8300 filed by the dealership, Edgardo Colon identified himself to the dealership as owner of Investments Unlimited.  See id.

There was also evidence that Edgaro Colon retained control and interest over Malaga #1. Although Malaga #1 was transferred to Investments Unlimited, the outstanding mortgage remained

in Edgardo Colon's name.  See GE 23-7.  Bank records established that to make the mortgage payments on the property during the bankruptcy, Edgardo Colon would deposit two checks into the Investments Unlimited account that appeared to be rent payments, and the same day made the mortgage payments using checks from the Investments Unlimited Account.  See GE 23-3; 23-4. Furthermore,  tax records established that Edgardo Colon continued to take the interest deduction on his personal taxes, even while in bankruptcy. See GE 31-5; 31-4; 31-3.  Investments Unlimited did not filed any taxes.  See GE 31-7.

While the bankruptcy case was ongoing and unbeknownst to Segarra, Edgardo Colon and Astrid Colon, in her capacity of president of Investments Unlimited, purchased several properties using Investments Unlimited.  The properties purchased were a penthouse apartment in Laguna Gardens ("Laguna V PHP") for $190,000, a building known as El Convento ("El Convento") for $490,000, which later became his office, and a vacant lot known as Antonsanti for $68,000 ("Antonsanti").  To purchase these properties Edgardo Colon deposited cash into the Investments Unlimited account and purchased manager's check on behalf of Investments Unlimited.  At all relevant times, R&G Bank was a financial institution insured by the Federal Deposit Insurance Corporation.  See ECF No. 291 at 25; GE 23-2 at 0783 to 0965; 23-3.

### A.    Laguna V Purchase

In early June 2006, Edgardo Colon negotiated on behalf of Investments Unlimited the purchase of Laguna V PHP. See GE 16 & 16A.  Upon reaching an agreement with the seller of the property, Edgardo Colon provided real estate agent Ivonne Quezada with the good faith offer check of $8,750.00 from the Investments Unlimited account and executed a draft and an original of the sales contracts for the property.  See GE 16; 16A, 17; see also ECF No. 289.

6

On July 14, 2006, Edgardo Colon went to R&G Bank and deposited $190,000 in cash into the Investments Unlimited account and purchased various managers checks required to close the transactions.  See GE 23-6; 38.  That same day, Astrid Colon and their mother, Angela Ledee-Ortiz, appeared at offices of attorney Hugo Arana-Torros and executed the deed purchasing Laguna V PHP on behalf of Investments Unlimited.  See GE 19A.  At the closing the checks that were purchased by Edgardo Colon on behalf of Investments Unlimited were presented to pay the seller and the outstanding mortgage on the property.  See ECF No. 289 at 7.

The deed for this property was presented to the Puerto Rico Property Registry by Hugo Arana-Torros.  See GE 21A.

### B.      Purchases of El Convento and Antonsanti

In addition to using the undisclosed corporation to purchase Laguna V PHP while in bankruptcy, Edgardo Colon and Astrid Colon purchased a building called El Convento and an adjacent lot called Antonsanti located in Santurce, Puerto Rico, for $420,000 and $68,000, respectively. See GE 10; 11.

In August 2006, Astrid Colon contacted attorney Gloria Cardona-Aldarondo ("Cardona") and informed there was a corporation buying some land and properties and requested Cardona preside over the closings for some properties.  See GE 10; 11; ECF No. 277 at 117-118; 130.  Astrid Colon also informed Cardona that she would provide drafts of the deeds for her. Id.

On August 22, 2006, Edgardo Colon went to R&G Bank and deposited $ 490,000 in cash into the Investments Unlimited account and purchased two managers checks, one for $399,000 for the purchase of El Convento and the other for $68,000 to be used for the purchase of the Antonsanti

property.  See GE 23-6; 23-4.[5]  Two days later, on August 24, 2006, Astrid Colon appeared at Cardaonas to execute the deed for the purchase of El Convento as president of Investments Unlimited.  See GE 10.  Then, on August 26, 2006, Astrid Colon appeared at the same offices and executed the deed for the purchase of Antonsanti, again acting as president of Investments Unlimited.  See GE 11.

During this time, the bankruptcy case was ongoing and Astrid Colon continued to represent Edgardo Colon in the bankruptcy proceedings.  See GE 1-1.

### C.      The Chapter 7 Trustee Discovers that Investments Unlimited was Property of the Bankruptcy Estate

In late December, 2006, a creditor filed an objection to the Report of No Distribution and regarding the ownership of Malaga #1.  See ECF No. 267 at 79; GE 1-1.   After investigating the complaint and learning that Edgardo Colon had transferred Malaga #1 to Investments Unlimited within a year of filing for bankruptcy, in which his bankruptcy attorney Astrid Colon appeared as president, Segarra commenced an adversary proceeding against Investments Unlimited,  Astrid Colon, and others, to reclaim the property.  See ECF No. 267 at 79-81.  Segarra also filed a cautionary notice in the property registry against Malaga #1 to protect the interests of the bankruptcy estate and place third parties on notice of the proceedings  See id.

Shortly after the filing of the adversary proceeding, on January 5, 2007, Astrid Colon withdrew from the bankruptcy case and informed the bankruptcy court that she had, effective immediately, resigned her position as president of Investments Unlimited.  See GE 1-4; 1-5. Notwithstanding the purported resignation, on January 17, 2007, she faxed a letter on her letterhead

---

[5]A down payment check of $21,000 was also written by Edgardo Colon from the Investments Unlimited account for the option for El Convento.  See GE 27-B

to the attorney for the Laguna V PHP transaction, Arana-Torros, requesting a copy of the presentation slip to the Puerto Rico Property Registry and informing him that they were no longer interested in recording the deed for the property.  See GE 22.

### D.   Three Kings Day Sale and Purchase of Monetary Instruments

Shortly after Segarra filed the adversary proceeding, Edgardo Colon transferred Malaga #1 to Luis Santiago Aponte, the father of his current girlfriend, Maribel Santiago-Aponte ("Maribel Santiago").  In early January 2007, Edgardo Colon contacted Cardona and told her that he was going to be selling a property, which later turned out to be Malaga #1. See ECF No. 227 at 135.  Edgardo Colon informed Cardona that it was very important and according to Cardona, Edgardo Colon seemed to be in a rush.  See ECF No. 227 at 135.  Against her protestations, the closing took place on Three Kings Day, which is a "very important" holiday in Puerto Rico.  See ECF No. 277 at 135. In addition, there was no title search to be performed.  See id.

According to the deed executed on January 6, 2007, Investments Unlimited was to sell Malaga #1 to Luis Santiago and his wife, Yolanda Lebron Matos, for the purchase price of $1,100,000.  See GE 12.  The terms of the purchase included a down payment of $410,000, payable in two installments of $205, 000, with the remainder to be financed by a purchase money mortgage on the property.  See GE 12. This time, Edgardo Colon secured the assistance of Myrna Cintron, his cousin and housekeeper, to appear as president of Investments Unlimited to execute the sales deed. See GE 12; ECF No. 297 at 42-42; 45; 81. At trial, Myrna Cintron testified that she was driven to the closing by Edgardo Colon and Maribel Santiago.  See ECF No.  297 at 47-48.  According to Myrna Cintron she did not obtain any compensation for the favor.  See ECF No. 297 at 46.

According to bank records, on January 8, 2007, a Banco Popular de Puerto Rico ("BPPR")

manager's check for $205,000 that had been purchased by Luis Santiago was deposited into the Investments Unlimited account. See GE 23-2. The same day the check was deposited into the Investments Unlimited account at R&G Bank, Edgardo Colon drafted four (4) checks from the Investments Unlimited account for $51,250 each, payable to four (4) individuals, Maria S. Bonilla-Hernanez ("Bonilla-Hernandez"), Reynaldo Cordero-Cintron ("Cordero-Cintron"), Rafael Vaquer ("Vaquer"), and the housekeeper, Myrna Cintron. See GE 23-3. In the memo portion of each check was written "participacion corporativa" or something to that effect, translated to mean "corporate participation". Id. These checks were then presented to R&G Bank and exchanged for four (4) R&G Bank manager's checks, payable to each individual. See GE 23-5.[6]

On January 12, 2007, the remaining $205,000 from the transaction was deposited into the Investments Unlimited account through a BPPR manager's check for $102,500, purchased by Luis Santiago and $102,500, purchased by his wife Yolanda Lebron Matos. See GE 23-2; 36. As with the previous deposit, Edgardo Colon drafted four (4) additional checks from the Investments Unlimited account payable to the same four individuals set forth above, again for $51,250 each. See GE 23-3. As before, the memo of each check contained a notation that the purpose of the checks were for participation in the corporation. Id. The checks were then presented to R&G Bank and exchanged for four (4) R&G bank manager's checks payable to each individual. See GE 23-5.

All four individuals to whom the checks were made out knew Edgardo Colon in some capacity, but denied having any ownership interest with Investments Unlimited and having received any money from the corporation or participating in any way. Rafael Vaquer is a physician and

---

[6] The back of these checks appeared to contain the endorsement of these individuals, however, at trial, all the individuals denied that it was their endorsement. All the checks appear to have been returned to the account of Luis Santiago and/or his wife.

knows Edgardo-Colon through his wife, who is Edgardo-Colon's cousin. <u>See</u> ECF No. 297, 25.Rafael Vaquer testified that he had never heard of Investments Unlimited before, was not an investor in the company, and had never received any money from that company. <u>See</u> ECF No. 297, at 26.  Cordero Cintron is Myrna Cintron's son and had installed air conditioning units for Edgardo Colon at Malaga #1 and his apartment in Laguna Gardens. <u>See</u> ECF No. 297 at 107.  Apart from this work, Cordero-Cintron, testified that he did not have any interest in Malaga #1 or Investments Unlimited. <u>See</u> <u>id.</u> at 95-96.  He also denied ever seeing or receiving any of the checks made out to in his name. <u>See</u> <u>id.</u> at 102-108.  Bonilla-Hernandez, whose husband is Edgardo Colon's cousin, likewise denied having any interest in Investments Unlimited and ever receiving the checks. <u>See</u> ECF No. 293 at 61-66.  Lastly, Myrna Cintron, who presided over the Three Kings Day sale of Malaga #1 to Luis Santiago, denied receiving any compensation and seeing any of the checks. <u>See</u> ECF No. 297 at 54-58.

At trial, Edgardo Colon's accountant, Jose Padilla-Serrano ("Padilla-Serrano") testified that sometime after the Three Kinds Day Sale, Edgardo Colon provided him with copies of the manager's checks and their receipts for safekeeping. <u>See</u> GE 36.

Sometime later, in 2008 or 2009, Edgardo Colon contacted the attorney who had presided over the Three Kings Day transaction, Cardona-Aldarondo, and informed her that the transaction had to be reversed because the buyer was not paying on the mortgage note as he was supposed to. <u>See</u> ECF No. 277 at 142.  Cardona-Aldarondo researched the issues with her notary supervisor and learned that it was possible to reverse the transaction but never heard back from Edgardo Colon. <u>See</u> <u>id.</u> at 143-44.

### E.   Settlement of Adversary Proceeding

On March 12, 2008, Astrid Colon, Edgardo Colon and other parties entered into a partial settlement agreement ("Partial Settlement Agreement") whereby they admitted that Malaga #1 was property of the estate and that Edgardo Colon would surrender the property so that it could be sold for the benefit of the estate.  See GE 5.  In addition, Edgardo Colon agreed that both "personally and as alter ego of Investments [Unlimited]" he would rescind and resolve the sale of Malaga #1 to Luis Santiago. See id.[7]  The Partial Settlement Agreement further provided that if the sale of Malaga #1 by the estate was insufficient to pay all the claims and costs, then the trustee could under certain conditions attempt to pursue the litigation against Laguna V PHP, El Convento and Antonsanti. See GE 5.  In addition, the Partial Settlement Agreement required that Edgardo Colon amend his schedules and statement of financial affairs to include all the personal injury lawsuits that were currently filed.  See id.

That same day, on March 12, 2008, Edgardo Colon filed his amended schedules where he included the lawsuits and recognized his 100% ownership of Investments Unlimited.  See GE 1-6.[8]

## IV.   Arguments

Defendant argues that there was insufficient evidence to support the verdict as to all counts of conviction.  The United States will address the substantive counts of conviction and then the count of conspiracy.

---

[7] Edgardo Colon was not originally named in the adversary proceeding because as a debtor in bankruptcy, the bankruptcy estate assumes all the rights and causes of action which he may have, including the right to seek recission of the sale of Malaga #1.  See ECF No. 269 at 18.  Nevertheless, in the agreement it provided that Edgardo Colon "voluntarily appears as indispensable party to enter into this Agreement and ratify all its provisions. [Edgardo Colon] further acknowledges that each of the provisions and extent of this Settlement Agreement has been fully explained to him by his attorney."GE 5.

[8] In July 2008, Segarra was able to sell Malaga #1 for the sum of $1,450,000.  See Bankruptcy Case No. 03-5547, ECF No. 354.

A.        **Fraudulent Concealment (Count 2)**

By failing to disclose his ownership of Investments Unlimited and the pre-petition transfer nine months before the bankruptcy, Edgardo Colon fraudulently concealed Malaga #1 and Investments Unlimited from the bankruptcy court, creditors and trustee in violation of 18 U.S.C. §152(1).  Fraudulent concealment occurs when the debtor "knowingly conceal[s] property of his chapter 7 estate from the chapter 7 trustee, with specific intent to defraud creditors." United States v. Grant, 971 F. 2d 799, 802 (1st Cir. 1992). See 18 U.S.C. §152(1).  With respect to property of the estate, "[t]he determination whether a debtor held a legal, equitable, or possessory interest in property at the commencement of the case requires the fact finder to evaluate all relevant direct and circumstantial evidence relating to the property and to the intent of the debtor." Grant, 971 F.2d at 806.  Concealment does not just mean hiding but also "includes 'withhold[ing of] knowledge' or 'prevent[ing] disclosure or recognition.'" id. at 807 (quoting, United States v. Turner, 725 F.2d 1154, 1157 (8th Cir.1984)).

As set forth above, the evidence supports the finding that Edgardo Colon's transfer and failure to disclose his ownership of Malaga # 1 and Investments Unlimited was done with the fraudulent purpose of keeping his residence, his most valuable asset, outside the reach of creditors and the bankruptcy trustee in hopes that he would receive a discharge from debts.  A rational juror was free to conclude that the pre-petition transfer and failure to disclose the same was done in contemplation of bankruptcy, particularly because the property was transferred to Investments Unlimited for little or no consideration and Edgardo Colon continued to take the interest deduction on his personal taxes.  See e.g., Provencher v. Berman, 699 F.2d 568, 572-73 (1st Cir.1983) (fact-finder considers evidence relating to such criteria as the source of funds, donative intent); In

re Sommer, 28 B.R. 95, 95-97 (Bankr.D.Colo.1983) (relevant factors may include the source of funds used to acquire the property, the record title, actual possession, intent of purchaser, payment of taxes, and maintenance of the property).   Furthermore, the evidence at trial established that Edgardo Colon failed to schedule both Malaga #1 and his ownership of Investments Unlimited in his first petition and schedules filed on May 28, 2003, amended petition and schedules on October 3, 2003, and lied under oath about the true owner of Investment Unlimited during his 341 Meeting on November 13, 2003.   The jury was free to disregard Edgardo Colon's theory that the omissions were accidental or done in good faith, particularly when the evidence at trial established that the owner of Investments Unlimited were not some investors from Chicago, as Edgardo Colon had testified, but rather himself.   Further reducing any chance that the non-disclosure was accidental, there was evidence that Edgardo Colon was living in Malaga #1 at the time of the bankruptcy and actively used Investments Unlimited to purchase three real estate properties and a vehicle during the ongoing bankruptcy case.

Thus, there was sufficient evidence at trial for a jury to conclude that Edgardo Colon had an ownership interest in both Malaga #1 and Investments Unlimited at the time he filed for bankruptcy and knowingly concealed, in other words prevented the discovery or recognition of, the same through the transfer, material omissions and misrepresentations in the bankruptcy filings and false statements made during the 341 meeting.[9]

**B.     Fraudulent Transfers (Counts Three, Four, Five & Six)**

The evidence at trial established that the post petition transfers, purchase of Laguna V PHP, El Convento, Antonsanti and sale of Malaga #1 to Luis Santiago (Three Kings Day Sale), were all

---

[9] The United States will address Edgardo Colon's arguments relating to entrapment by estoppel below.

14

done with the necessary fraudulent intent to defeat the provisions of the bankruptcy code.   Section

152(7) of Title 18, United States Code, provides, in relevant part:

> A person who-
> . . . . .
> (7) in a personal capacity or as an agent or officer of any person or corporation, [. .
> . ] with intent to defeat the provisions of title 11, knowingly and fraudulently
> transfers or conceals any of his property or the property of such other person or
> corporation; ...
> . . . . .
> shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 152(7).  See United States v. Sabbeth, 125 F.Supp. 2d 33, 37 (E.D.N.Y. 2000).  Unlike

the fraudulent concealment provision contained in §152(1), the fraudulent transfer provision

contained in §152(7) does not require that the transferred property belong to the bankruptcy estate.

See United States v. Moody, 923 F.2d 341, 347 (5th Cir.1991); see also Sabbeth, 125 F. Supp. 2d

at 38.

      With respect to the purchases of Laguna V PHP, El Convento and Antonsanti, the evidence

established that Edgardo Colon deposited cash into the Investments Unlimited account and

purchased the properties using the undisclosed corporation, thereby allowing him to continue

acquiring real estate without it affecting his bankruptcy.  Indeed, by not disclosing to the bankruptcy

court that he was the owner of Investments Unlimited, or that the corporation was receiving large

cash infusions and acquiring properties, Segarra was unable to administer the shares or the assets of

the corporation for the benefit of creditors or obtain a true value of Investments Unlimited.  See ECF

No. 271 at 55; 277 at 11-12.  Therefore, the jury was free to find each transaction conducted by

Investments Unlimited constituted a fraudulent transfer intended to defeat the ongoing bankruptcy,

irrespective of whether the proceeds themselves deposited into the corporation were property of the

estate.  See e.g., Moody, 923 F2d at 344 (affirming conviction for post-petition fraudulent transfer where defendant transferred $201,000 from a CD held by a corporation held by the debtor to a trust without informing trustee).[10]

The evidence at trial also supported the conviction for the fraudulent transfer of Malaga #1 to Luis Santiago in the Three Kings Day Sale.  In late December 2006, Edgardo Colon was aware that the trustee was taking steps to reclaim Investments Unlimited and Malaga #1 into the bankruptcy estate.  Shortly thereafter, Edgardo Colon obtained the services of his housekeeper Cintron-Estrada to act as president of Investments Unlimited so that he could transfer it to his girlfriend's father, Luis Santiago for the sum of $1,100,000.  Based on the nature of the transaction, including the fact that it was a "rush", had no title search, and the circumstances surrounding the disbursements of the $410,000 down payment, the jury could readily infer that Edgardo Colon had executed the transfer for the purpose of frustrating the trustee in his attempt to reclaim and administer the property for the benefit of creditors.

## C.    Money Laundering (Count 7)

There was sufficient evidence for a reasonable jury to conclude that exchanging eight (8) commercial checks for eight (8) manager's checks through R&G Bank was a transaction designed in whole or in part to disguise the nature, location, source, ownership and control of the proceeds of the Three Kings Day sale on January 6, 2007.  Furthermore, because the transaction involved proceeds from a real estate transaction and the money laundering transaction involved an FDIC

---

[10] Although property of the estate is not an element for this count, any interests in property acquired by Investments Unlimited post-petition are property of the estate and therefore would be highly relevant in determining the distribution available to creditors. See 11 U.S.C. § 541(a)(7)(property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case").  See also, Segarra Testimony, ECF Nos. 271 at 55; 277 at 11-12.

insured institution, there was ample evidence to support the jurisdictional requirement that the transaction have "a minimal effect" on interstate commerce. United States v. Owens, 167 F.3d 739, 755 (1st Cir. 1999)

To sustain a conviction under § 1956(a)(1)(B)(i), the government must prove: "(1) that [defendant] knowingly conducted a financial transaction, (2) that he knew that the transaction involved funds that were proceeds of some form of unlawful activity, (3) that the funds were proceeds of a specified unlawful activity, and (4) that [defendant] engaged in the financial transaction knowing that it was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity." United States v. Hall, 434 F.3d 42, 49 -50 (1st Cir. 2006).  See also United States v. Cornier-Ortiz, 361 F.3d 29, 37 (1st Cir. 2004).

The term "financial transaction" is defined in 18 U.S.C. §1956(c)(4) as follows:

(A) a transaction which in any way or degree affects interstate or foreign commerce
    (i) involving the movement of funds by wire or other means or
    (ii) involving one or more monetary instruments, or
    (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or

(B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

Although some effect on interstate commerce is required, "a minimal effect" is sufficient to support a conviction. Owens, 167 F.3d 739, 755 (1st Cir. 1999).

At trial, the evidence established that the three checks totaling $410,000 that were deposited into the Investments Unlimited accounts were the proceeds of the Three Kings Day Sale.  Not only did the amounts of the deposits match exactly with the amounts in the deed, but the checks themselves indicate that the purchasers were Luis Santiago and his wife.  See GE 23-2; 36.

Furthermore, Edgardo Colon's own exhibits, the checks used by Luis Santiago to purchase two of the bank checks for the transaction, contain notations confirming that the funds were for the purchase of a real property.  See Defense Exhibit ("DE") IV & V.

There was also ample evidence for a rational juror to conclude that Edgardo Colon was aware that these were proceeds of unlawful activity.  Not only was Edgardo Colon in bankruptcy but at this time but he was facing a lawsuit by Segarra who was seeking to recover Malaga #1 on behalf of the bankruptcy estate.  See GE 1-1. This fact, coupled with Edgardo Colon' rush to sell the property and the unusual circumstances surrounding the transaction allowed the jury to conclude the Edgardo Colon was fully aware that the proceeds from the transaction were proceeds from an unlawful activity.

The fact that the transaction was designed to conceal the nature, location, source and ownership of proceeds of the Three Kings Day sale is evident from the fact that each check was made out to Edgardo Colon's various relatives and colleagues, all third parties who denied any participation in Investments Unlimited.  See United States v. Hall, 434 F. 3d 42, 50 (1st Cir. 2006) ("Proof of this element may be based on direct evidence, such as defendant's own statements; or circumstantial evidence, like the use of a third party to disguise the transaction; or unusual secrecy in making the transaction"); United States v. Ladum, 141 F.3d 1328, 1333 (9th Cir. 1998) (concluding that a defendant who had concealed ownership of a business from a bankruptcy trustee through the use of nominees had committed concealment money laundering).  Moreover, the memo portions of each commercial check signed by Edgardo Colon indicated that the purpose was to provide disbursements in connection with their purported participation in Investments Unlimited. See GE 23-3 at 1017-1019.  From the use of these third parties and unusual nature of the transaction,

the jury could readily conclude that Edgardo Colon had structured the transaction to provide the appearance that Investments Unlimited had outside investors as he testified at the 341 Meeting, when in fact, it did not.

Lastly, Edgardo Colon suggests that there was no evidence to support the conclusion that the transaction had a minimal effect on interstate commerce. Deposit and disbursement of proceeds through an FDIC insured institution is sufficient to establish an interstate nexus requirement to support a money laundering conviction.  See United States v. Peay, 972 F.2d 71, 74-75 (4th Cir. 1992); United States v. Wadena, 152 F.3d 831, 853 (8th Cir. 1998) (18 U.S.C. §1957); .  See also United States v. Golden, 255 Fed. Appx. 733, 735, 2007 WL 4192002, at *2 (4th Cir. 2007) (unpublished); United States v. Behmanshah, 49 Fed.Appx. 372, 376, 2002 WL 31167423, at *3 (3rd Cir. 2002) (unpublished).  Moreover, "[t]he requirement that the transaction or financial institution 'affect[] interstate commerce' means the proof of a 'minimal effect' on interstate commerce is needed to support federal jurisdiction." United States v. Leslie, 103 F.3d 1093, 1101 (2nd Cir. 1997) (quoting, United States v. Grey, 56 F.3d 1219, 1225 (10th Cir. 1995)).  This reflects "Congress's desire to exercise the full extent of its Commerce Clause power." Leslie, 103 F3d at 1101.

Here, not only did the records custodian testify that R&G Bank was FDIC insured, but the statements and copies of checks further corroborate that R&G Bank was FDIC insured at the time of the transaction.  See Ladum, 141 F.3d at 1349 (finding "[i]nscriptions on bank documents may be considered in establishing the bank's status"); see e.g., United States v. Namer, 149 Fed. Appx. 385, 396, 2005 WL 2087833, at **8 (6th Cir. 2005) (unpublished) (noting that all monthly statements and checks introduced as exhibits stated that bank was FDIC insured).  The eight (8) Investments Unlimited commercial checks totaling $410,000 drafted by Edgardo Colon were deposited into the

FDIC insured Investments Unlimited account at R&G Bank and used to purchase the manager's checks from the same institution, thereby satisfying the jurisdictional element.

In addition, the evidence at trial established that Investments Unlimited was engaged in the business of real estate investing, an activity affecting interstate commerce. See Leslie, 103 F.3d at 1102 (finding that "one need not make a leap of faith to conclude that a business engaged in real estate markets also has, at least, a minimal effect on interstate commerce").

For these reasons, there was sufficient evidence for a jury to find Edgardo Colon guilty of Count 7.

### D.      Conspiracy (Count One)

Conspiracy requires that the government prove "that the defendant and one or more conspirators intended to agree and . . . to commit the substantive criminal offense which was the object of their unlawful agreement." United States v. Escobar-de Jesus, 187 F.3d 148, 175 (1st Cir. 1999) (internal quotations omitted).  In addition, one overt act in furtherance of the conspiracy mut be proven.  See 18 U.S.C. §371.  The agreement "may be express or tacit and may be proved by direct or circumstantial evidence." id. at 175.  Furthermore, "[d]ue to the clandestine nature of criminal conspiracies, the law recognizes that . . . a common purpose and plan may be inferred from a development and collection of circumstances." United States v. Tejada, 974 F.2d 210, 212 (1st Cir. 1992) (internal quotations omitted).

In this case the evidence was sufficient to establish that Edgardo Colon conspired with his sister Astrid Colon to conceal Malaga #1 and Investments Unlimited from the bankruptcy trustee in violation of 18 U.S.C. §152(1) and conduct the fraudulent transfers in violation of 18 U.S.C. §152(7).  With respect to the concealment, the jury could have reasonably concluded that the

Edgardo Colon and Astrid Colon transferred Malaga #1 to Investments with the mutual understanding that the transfer was in contemplation of the upcoming bankruptcy. See United States v. Chambron, 1994 WL 645341, at *2 (4th Cir. 1994) (unpublished) (affirming convictions for conspiracy to conceal assets and noting that "[t]he jury reasonably could have concluded that the activities under taken by [defendants] prior to filing the bankruptcy petition were to conceal [. . . ] assets from the creditors of [the company] in contemplation of bankruptcy"). This is further reinformed by the fact that both signed the bankruptcy forms containing misleading information, appeared at the 341 Meeting where Edgardo Colon testified falsely, and as set forth in detail below, they both continued to together operate Investments Unlimited while the bankruptcy case was ongoing. Based on this, the jury was free to conclude that Edgardo Colon and Astrid Colon had agreed to prevent Segarra from being able to administer either Malaga #1 or Investments Unlimited for the benefit of creditors.

The agreement to fraudulently transfer properties using Investments Unlimited in violation of 18 U.S.C. §152(7) is evident from Edgardo Colon and Astrid Colon's joint efforts at purchasing Laguna V PHP, El Convento and Antonsanti. For each of the transactions, Edgardo Colon deposited the cash into the Investments Unlimited account and purchased the money orders required to complete the sale. These checks were the provided to Astrid Colon (or her mother Angela Colon-Ledee) to pay for the purchased properties at the closing. The fact that Astrid Colon, in addition to being president of Investment Unlimited was also acting as his bankruptcy attorney at the time, indicated that they both shared the unlawful goal of executing these transactions without the knowledge or consent of Segarra and the bankruptcy court.

E.        Settlement Agreement

Defendant renews his request to exclude the settlement agreement on the grounds that it violates the doctrine of entrapment by estoppel and Federal Rule of Evidence ("FRE") 408.  As a threshold matter, these arguments are wholly undeveloped.  See ECF No. 331 at 4.  Therefore, these arguments should be deemed waived.  See United States v. Zanino, 895 F.2d 1, 17 (1st Cir. 1990); United States v. Berkowitz, 927 F.3d 1376, 1384 (7th Cir. 1991); United States v. Perez-Velazquez, 488 F. Supp.2d 82, 87 n. 6 (D.P.R. 2007).

The defense of entrapment by estoppel requires a defendant "to show that he had been told by a government official that his behavior was legal and that he reasonably relied upon that advice." United States v. Bunnell, 280 F.3d 46, 91 (1st Cir. 2002).  See United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006).  Edgardo Colon does not raise this claim but rather, claims he was mislead into signing the settlement agreement with under the guise of ending all bankruptcy issues, including any criminal prosecution.  Based on this, Edgardo Colon argues that the settlement agreement, which he executed while represented by counsel, should have been excluded.

First, entrapment by estoppel is a defense and not an evidentiary doctrine and therefore is inapplicable to the exclusion or admission of the settlement agreement.  Second, and more importantly, there was absolutely no evidence that Edgardo Colon was told by anyone that his conduct was legal or that his statements in the civil adversary proceedings might not be used against him.[11]  To the contrary, the settlement agreement makes clear that the document was being executed voluntarily and with the advice and consultation of counsel. See GE 5.

---

[11] Apart from making a referral to the United States Trustee, who then referred the matter to the FBI on May 27, 2007, as required by law, there was no evidence that Segarra had any further involvement in the criminal investigation or prosecution of the case.

Edgardo Colon also intimates that the settlement agreement should have been excluded pursuant to FRE 408. This matter was ruled upon by the Court which found that the settlement agreement was admissible. See ECF Nos. 268 & 270.[12] In the motion, Edgardo Colon fails to aver how the Court's ruling was erroneous.

Federal Rule of Evidence 408 generally prohibits evidence of compromises and offers to compromise outstanding claims.[12] The rule provides an exception for "conduct or statements made in compromise negotiations regarding the claim [. . . ]when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority." The 2006 Advisory Committee explains that "[w]here an individual makes a statement in the presence of government agents, its subsequent admission in a criminal case should not be unexpected." The Advisory Committee cites to United States v. Prewitt, 34 F.3d 436, 439 (7th Cir. 1994), which held that admissions of fault in a civil securities fraud enforcement action were admissible against the defendant in a subsequent criminal action. This is exactly the case here where Edgardo Colon, represented by counsel, entered into a settlement agreement with Segarra, the Chapter 7 trustee, where he made certain statements regarding being an "alter ego" of Investments Unlimited and agreed to make Malaga #1 and the other properties available to satisfy the claims of creditors. As such, the settlement agreement was properly admitted.

---

[12] A transcript of the ruling and arguments conducted on January 11 & 12, 2012 are not available at the time of the filing of the motion.

[12] FRE 408 provides: (a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction : (1) furnishing or offering or promising to furnish–accepting or offering or promising to accept– a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

**V.      Conclusion**

For the reasons set forth above, the United States submits that viewing the evidence in a light most favorable to the verdict, sufficient evidence exists in the record to support the verdicts in Counts One through Seven, inclusive.  Therefore,  the Edgardo Colon's Motion Under Rule 29 should be DENIED.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 28th day of March 2012.


Rosa Emilia Rodríguez-Vélez
United States Attorney


s/ Charles R. Walsh
Charles R. Walsh G-00514
Assistant U.S. Attorney
Torre Chardon Suite 1201
350 Carlos Chardon Street
San Juan, Puerto Rico  00918
Tel: (787)766-5656

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system to notify counsel of record.

At San Juan, Puerto Rico, this 28th day of March, 2012

s/ Charles R. Walsh
Charles R. Walsh
Assistant U.S. Attorney