**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**                              **Criminal No. 09-131 (ADC)**

**[1] EDGARDO COLÓN LEDÉE,**

    **Defendant.**

**<u>OPINION AND ORDER</u>**

**I.**    **Background**

On April 1, 2009, the Grand Jury issued an eight-count indictment against Edgardo Colón-Ledée ("defendant" or "Edgardo Colón") and Astrid Colón-Ledée ("co-defendant" or "Astrid Colón", collectively "defendants") . **ECF No. 3**. In that indictment, defendants were charged with various offenses relating to bankruptcy fraud. *Id.* Trial as to both defendants began on January 9, 2012. **ECF No. 265**. On February 6, 2012, at the close of the United States' case, defendants both moved for acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29"). **ECF No. 333**. The United States opposed the motions. *Id.* The Court subsequently denied the motions. **ECF No. 334**.[1]

On February 8, 2012, the jury returned its verdict, finding defendants guilty of a conspiracy to fraudulently conceal property belonging to the estate of a bankruptcy debtor, in violation of 18 U.S.C. §152(1), and to fraudulently transfer property intending to defeat the provisions of U.S. Code Title 11, in violation of 18 U.S.C. §152(7). **ECF No. 316**. Defendants were also found guilty of one count of fraudulent concealment and three counts of fraudulent transfers. *Id.* Additionally, defendant was found guilty of an additional count

---

[1] The Court notes that both defendants neglected to renew their motions under Rule 29 at the close of their evidence. Further, although co-defendant, Astrid Colón-Ledée, requested an extension of time to file a renewed Rule 29 motion following the jury verdict (**ECF No. 322**), she never did so.

of fraudulent transfer[2] under which Astrid Colón was not charged, as well as one count of money laundering. *Id.*

Defendant renewed his request for acquittal in a written motion filed on March 8, 2012. **ECF No. 331**. Therein, defendant attacked all evidence[3] underlying each of the counts for which he was found guilty,[4] as well as the admission into evidence at trial of a settlement agreement reached in prior bankruptcy proceedings. *Id.* Defendant also challenges the Court's refusal to instruct the jury on selective prosecution and entrapment by estoppel. *Id.* The United States opposed the motion. **ECF No. 341**.

## II.     Selective Prosecution

The Court first addresses defendant's brief re-invocation of the selective prosecution argument within his Rule 29 motion. *See* **ECF No. 331**. As noted by the Court in its previous Order (**ECF No. 301**), although defendant attempted to use selective prosecution as an evidentiary objection at trial, it is a defense, rather than an evidentiary doctrine. *See e.g. United States v. Lewis*, 517 F.3d 20, 23 (1st Cir. 2008). Thus, as defendant failed to previously raise selective prosecution as a defense, he waived the defense at trial and was not entitled to a jury instruction regarding it. *See* Fed.R.Crim.P. 12(e); *Tracey v. United States*, 739 F.2d 679, 682 (1st Cir. 1984), *cert. denied*, 469 U.S. 1109 (1985) (ruling on the precursor rule, Fed.R.Crim.P. 12(f)).

---

[2]  The jury found Edgardo Colón not guilty of one additional count, which charged him with fraudulent transfer. **ECF No. 316**.

[3]  Defendant attacks the sufficiency of the evidence as to several counts in the indictment by asserting generically that "[t]here is insufficient evidence in the record." **ECF No. 331**. The Court might consider such under-developed arguments waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). However, acting in an abundance of caution, the Court addresses the sufficiency of the evidence underlying each contested count.

[4]  Among the counts which defendant attacks is Count Eight, for which he was found not guilty of a fraudulent transfer of property. However, defendant failed to contest the sufficiency of the evidence relating to Count Six, which is another fraudulent transfer count on which defendant was convicted. Thus, the Court understands that defendant intended to challenge the sufficiency of the evidence underlying Count Six, rather than Count Eight.

Further, as the Court already held, defendant's claim of selective prosecution also failed on its merits as defendant adduced no objective evidence of prosecutorial vindictiveness. *See United States v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009). Accordingly, the Court finds no error in its determination not to instruct the jury on selective prosecution.

### III.   Entrapment by Estoppel

Next, the Court addresses defendant's argument regarding entrapment by estoppel[5] in relation to the admission of a 2008 settlement agreement ("the 2008 Settlement Agreement") entered between United States Bankruptcy Trustee Wilfredo Segarra-Miranda and, *inter alia*, Edgardo Colón[6] in the bankruptcy proceedings which underlie the instant criminal case. *See* **ECF No. 331**.

Like selective prosecution, entrapment by estoppel is a defense rather than an evidentiary objection and, accordingly, should have been raised prior to trial. *See e.g. United States v. Sousa*, 468 F.3d 42, 46 (1st Cir. 2006) (operating under the principle that entrapment by estoppel is a defense). Defendant failed to do so, but rather repeatedly attempted to improperly use "estoppel" as an evidentiary objection to the introduction of evidence stemming from the 2008 Settlement Agreement.

However, even if defendant had properly raised this defense prior to trial, the Court would still not have been obliged to present the jury with a related instruction as defendant failed to propound evidence which would support an entrapment by estoppel defense. The entrapment by estoppel defense has four prongs which defendant must establish: (1) a

---

[5] Previously, based on defense counsel's oral arguments during trial, the Court understood that defendant's position was that *collateral estoppel* applied to bar introduction of the Settlement Agreement into evidence. **ECF No. 302**. The Court herein incorporates by reference the rationale presented in its previous Opinion and Order overruling any objections to the Settlement Agreement based on collateral estoppel. *See* **ECF No. 302**. However, defendant now argues that he intended to object based on the doctrine of *entrapment by estoppel*, rather than collateral estoppel. Accordingly, the Court addresses this new entrapment by estoppel argument herein.

[6] Parties to the settlement agreement were: Bankruptcy Trustee Wilfredo Segarra-Miranda, Investments Unlimited, Inc., Astrid Colón-Ledée, Angela Ledée-Ortíz and Edgardo Colón-Ledée. Government Exhibit ("GE") 5.

government official must tell defendant that his conduct is legal; (2) defendant must have relied on that representation; (3) defendant's reliance must have been reasonable; and (4) because of the reliance, prosecution for the conduct is unfair. *United States v. Villafañe-Jiménez*, 410 F.3d 74, 81 (1st Cir. 2005). Here, there is no indication that defendant was ever told by a government official that his underlying conduct, i.e. making fraudulent transfers and concealing assets, was legal. In fact, defendant does not even argue at this late stage that a government official indicated in any manner that his conduct was legal. Rather, defendant simply argues that he was tricked into signing the 2008 Settlement Agreement, which he believed ended all pending legal matters relating to his bankruptcy, including any potential criminal action. Thus, defendant failed to even properly allege an entrapment by estoppel defense and, further, could not support such a defense as there is no evidence that he was told that his conduct was legal. Accordingly, defendant was not entitled to an instruction regarding entrapment by estoppel as he failed to raise this defense prior to trial and as no evidence was presented to support such a defense.

## III.   The Settlement Agreement and Rule 408

Next, the Court addresses defendant's related argument that the Court erred when it admitted the 2008 Settlement Agreement into evidence under Federal Rule of Evidence 408 ("Rule 408"). *See* **ECF No. 331**.

In pertinent part, Rule 408 provides that the following uses of compromises and settlement agreements  are prohibited:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory investigative, or enforcement authority.

Fed.R.Evid. 408(a).  All uses which are not prohibited by Rule 408(a) are permitted under Rule 408(b).  Fed.R.Evid. 408(b).  The rule applies to both civil and criminal proceedings.[7]  *United States v. Davis*, 596 F.3d 852, 860 (D.C. Cir. 2010) (citing Fed.R.Evid. 408 advisory committee note for 2006 amendments).  However, under the current incarnation of Rule 408, a defendant's statements and resulting settlement with a government agency are admissible in a criminal case against the defendant.  Fed.R.Evid. 408(a)(2); *see also Davis*, 596 F.3d at 860.

Here, the 2008 Settlement Agreement was entered into by defendant, who was represented by counsel, and the United States Bankruptcy Trustee.  Government Exhibit ("GE") 5.  Thus, although Rule 408 typically applies to bar entry of evidence relating to a settlement agreement into criminal proceedings, the 2008 Settlement Agreement is admissible under the exception for settlements between defendants and government actors.  Accordingly, the Court finds no error under Rule 408(a)(2) in its admission of the 2008 Settlement Agreement at trial and any resulting consideration of this and related evidence by the jury.

## IV.    Insufficient Evidence Under Rule 29

Defendant's remaining arguments hinge on his assertion that the United States presented insufficient evidence to support each of the counts for which the jury found him guilty.  **ECF No. 331**.

Rule 29 provides the mechanism by which a criminal defendant may move for a judgment of acquittal where the defendant believes that the evidence presented by the United States is insufficient to sustain a conviction.  Fed.R.Crim.P. 29.  When ruling upon a motion under Rule 29, the Court must "assay[] all the evidence in the light most amiable to the government" and take "all reasonable inferences in its favor" to "determine that a rational

---

[7]  Prior to the 2006 amendments to Federal Rule of Evidence 408, it was unclear whether the rule applied to criminal proceedings.  *See United States v. Roti*, 484 F.3d 934, 936 (7th Cir. 2007) (discussing the Advisory Committee's approval of the introduction of a civil securities fraud settlement in a subsequent criminal proceeding, but disapproval of the idea that the result was proper because Rule 408 did not apply to criminal actions).

factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." *United States v. Valerio*, 676 F.3d 237, 244 (1st Cir. 2012) (quoting *United States v. Hernández*, 146 F.3d 30, 32 (1st Cir. 1998) (internal quotations omitted). Thus, the Court views the evidence, "including all reasonable inferences drawn therefrom, in the light most favorable to the jury's verdict." *United States v. Shaw*, 670 F.3d 360, 362 (1st Cir. 2012) (citing *United States v. Pérez-Meléndez*, 599 F.3d 31, 40 (1st Cir. 2010)). Further, the Court notes that "[i]ndividual pieces of evidence viewed in isolation may be insufficient in themselves to prove a point, but in cumulation may indeed meet the mark." *Id.* Ultimately, to deny a Rule 29 motion the Court need not assure itself that the jury could have reached no other verdict other than a guilty one; rather, the Court need only "satisfy itself that the guilty verdict finds support in a plausible rendition of the record." *Id.* (quoting *United States v. Hatch*, 434 F.3d 1, 4 (1st Cir. 2006)).

### A.      Count Two – Fraudulent Concealment

First, defendant contests the sufficiency of the evidence regarding intent in relation to Count Two. **ECF No. 331**. This count charges defendant with the fraudulent concealment of his ownership interest in Investments Unlimited and his residence and office ("Malaga #1") from the bankruptcy court, creditors and trustee in violation of 18 U.S.C. §152(1). **ECF No. 3**.

In order to prove fraudulent concealment, the United States must prove, beyond a reasonable doubt, that the defendant knowingly concealed property of the bankruptcy estate from the trustee, with specific intent to defraud creditors. *United States v. Grant*, 971 F.2d 799, 802 (1st Cir. 1992).

Here, the United States introduced evidence that, on August 17, 2002, defendant transferred Malaga #1 to Investments Unlimited, a corporation wholly owned[8] and controlled by defendant. *See* GE 6 & 7. Although Malaga #1 had an outstanding mortgage of

---

[8] The United States provided evidence that defendant, Edgardo Colón, was the sole owner of Investments Unlimited, including bank records listing him as the sole signatory of the account. GE 1-6, 23-1, 23-2, 23-3 & 23-4.

approximately $700,000 at the time, the transfer was made to satisfy a purported debt of $40,000. GE 6. Approximately nine months later, defendant filed for bankruptcy under Chapter 7. GE 1-1 & 1-2. In the bankruptcy filings, defendant failed to disclose that he had transferred Malaga #1 within one year of filing for bankruptcy, as required by bankruptcy law. GE 1-2. Further, defendant failed to disclose his ownership of Investments Unlimited in the initial bankruptcy filings and in amended filings that he subsequently filed.[9] GE 1-2 & 1-3.

The United States also set forth evidence which indicated that, after Malaga #1 was transferred to Investments Unlimited, the mortgage on the property remained in defendant's name and that defendant took the interest deduction for Malaga #1 on his personal taxes while in bankruptcy. GE 23-7, 31-5 & 31-6. Further, bank records showed that, while the bankruptcy was pending, defendant would deposit two checks into the Investments Unlimited account as "rent payments" and, on the same day, would make the mortgage payments on Malaga #1 using checks from that account. GE 23-3 & 23-4.

On November 13, 2003, during a meeting of creditors ("the 341 meeting"), defendant testified under oath that his amended filings were correct and that his only relationship with Investments Unlimited was through a rental agreement by which he rented Malaga #1. GE 2 at 54-56. Defendant further stated that Investments Unlimited was owned by shareholders in Chicago. *Id.* After the meeting, co-defendant, Astrid Colón-Ledée, acting as defendant's attorney, submitted to Wilfredo Segarra ("the Chapter 7 Trustee") copies of leases which showed that defendant rented Malaga #1 from Investments Unlimited. **ECF No. 267** at 78; GE 1-1. Unaware of the pre-petition transfer of Malaga #1 to Investments Unlimited, the Chapter 7 Trustee filed a report of no distribution on December 28, 2004. **ECF No. 267** at 78; GE 1-1. However, in December of 2006, a creditor filed an objection to the report of no

---

[9] Attorney Astrid Colón acted as the attorney for her brother, Edgardo Colón, during this stage of the bankruptcy proceedings (i.e. filing of the petitions and schedules, filing of amended schedules, auditors' hearings, etc...) and as an officer for Investments Unlimited.

distribution regarding ownership of Malaga #1.  **ECF No. 267** at 79-80; GE 1-1.  After an investigation, the Chapter 7 Trustee commenced an adversary proceeding against, *inter alia*, defendant and Investments Unlimited to reclaim Malaga #1.  **ECF No. 267** at 79-81.

Shortly after the Chapter 7 Trustee filed the adversary proceeding, Malaga #1 was transferred to Luis Santiago-Aponte ("Santiago"), the father of defendant's then-girlfriend. GE 12.  According to the deed, executed on January 6, 2007, Investments Unlimited sold Malaga #1 to Santiago and his wife, Yolanda Lebrón-Matos ("Lebrón), for $1,100,000.  **ECF No. 297** at 42-48 & 81; GE 12..   The sale price was to be paid with a down payment of $410,000, payable in two installments of $205,000, with the remainder to be financed through a mortgage on the property.  *Id.*  Myrna Cintrón ("Cintrón"), defendant's cousin and housekeeper, appeared as President of Investments Unlimited on the sales deed. **ECF No. 297** at 42-48 & 81; GE 12. On January 8, 2007, a Banco Popular de Puerto Rico ("BPPR") manager's check for $205,000 purchased by Santiago was deposited into the Investments Unlimited account at R&G Bank.  GE 23-2.  On that same day, defendant wrote four checks from the account for $51,250 each, payable to four individuals whom defendant knew or was related to in some capacity. GE-23-3. During trial, each of these four persons denied having any ownership interest in Investments Unlimited and having received any money from the corporation.  **ECF No. 297** at 25-26; **ECF No. 297** at 95-108; **ECF No. 293** at 61-66; **ECF No. 297** at 54-58.   Each of these four checks was presented to R&G Bank and exchanged for a manager's check, payable to each individual. GE 23-3.  On January 12, 2007, the remaining 205,000 dollars were deposited in the Investments Unlimited account through two BPPR managers checks purchased by Santiago and his wife, Lebrón.  GE 23-2 & 36.  Again, defendant drafted four checks from the Investments Unlimited account payable to the same four individuals and again, these checks were exchanged for R&G Bank manager's checks. GE 23-5.  Similarly, the payees testified and denied having any interest or participation in the transactions, in Investments Unlimited or in the Malaga I property..

On March 12, 2008, Edgardo Colón entered into the 2008 Settlement with the Trustee,

wherein they admitted that Malaga #1 was property of defendant's bankruptcy estate and agreed that defendant would surrender the property so that it could be sold for the benefit to the estate.  GE-5.  Defendant, identifying himself in part as the alter ego of Investments Unlimited, agreed to rescind the sale of Malaga #1 to Santiago.  *Id.*  On that same day, defendant amended his bankruptcy filings to include his 100% ownership of Investments Unlimited.  GE 1-6.

From the evidence admitted, the jury could have reasonably found by the preponderance of the evidence that defendant transferred the Malaga #1 property to Investments Unlimited, a corporation in which he held a 100% interest, in order to conceal his ownership and prevent the property from being included in his bankruptcy estate, thereafter making material omissions and misstatements during the bankruptcy proceedings to conceal the transfer.  This conclusion is supported by the repeated transfers of Malaga #1, the timing of the transfers, the testimony of the persons who stated that they received no financial gain from the second transaction, despite the drafting of checks to them from the proceeds of the sale.  The conclusion is further supported by defendant's false statements regarding the ownership of Investments Unlimited during the 341 Meeting and defendant's failure to report his ownership of Investments Unlimited in his first and amended bankruptcy filings. Additional evidence showed that, even following the pre-bankruptcy transfer of Malaga #1 to Investments Unlimited, the mortgage remained in defendant's name, defendant took the related mortgage interest deductions from his personal income taxes, and defendant continued to live on the property.  Accordingly, viewing the evidence in the light most favorable to the jury's verdict, the Court finds ample support for the same and, accordingly, **DENIES** defendant's motion for acquittal as to Count Two.

### B.    Counts Three through Six – Fraudulent Transfers

Defendant also contests the sufficiency of the evidence as to Counts Three through Six, asserting that the United States failed to provide sufficient evidence of specific fraudulent

intent.[10]  **ECF No. 331**.  These counts charged defendant with the fraudulent transfer of: (a)$190,000 through Investments Unlimited to purchase a penthouse apartment in Laguna Gardens ("Laguna V-PHP"); (b)of $420,000 through Investments Unlimited to purchase a building called El Convento ("El Convento");   and (c)of $68,000 through Investments Unlimited to purchase the adjacent lot ("Antonsanti"), as well as the transfer of Malaga #1 from Investments Unlimited to Santiago for $1,100,000, all in violation of 18 U.S.C. §152(7). *See* **ECF No. 3**.

In relevant part, 18 U.S.C. §152(7) criminalizes the knowing and fraudulent transfer or concealment of property where the transfer or concealment is undertaken with the intent to defeat the provisions of the Bankruptcy Code.  18 U.S.C. §152(7); *see also United States v. McIntosh*, 124 F.3d 1330, 1334 (10th Cir. 1997).  Unlike other provisions of 18 U.S.C. §152, §152(7) does not contain a requirement that transferred property belong to the defendant's bankruptcy estate.  *Compare* 18 U.S.C. §152(1) (specifying that the subject property must belong to the estate of the debtor) *with* 18 U.S.C. §152(7) (concerning "any of [defendant's] property or the property of [any] other person or corporation" so long as the transfer or concealment is undertaken with "intent to defeat the provisions of title 11"); *see also United States v. Sabbeth*, 262 F.3d 207, 216 (2d Cir. 2001) (including "all property that would have belonged to the debtor's estate but for a preferential transfer or fraudulent conveyance" within the meaning of the statute); *United States v. Messner*, 107 F.3d 1448, 1452-53 (10th Cir. 1997) (finding that "culpability will attach to a concealment of a person's *own* property if done for the purpose of defeating bankruptcy"); *United States v. Moody*, 923 F.2d 341, 346-47 (5th Cir. 1991) (noting the distinction between the statutes and also noting that, while sometimes referring to distinct types of property, upon occasion, the property described in §152(1) and §152(7) may overlap in approving of the district court's jury instructions).

---

[10]  Defendant's other arguments as to insufficiency of the  evidence relating to these counts stem from the alleged impropriety of admitting the 2008 Settlement Agreement into evidence. *See* **ECF No. 331**.  However, as already explained by the Court above, admission of the 2008 Settlement Agreement was proper under Rule 408.

As outlined above, at trial, the United States presented evidence that, when faced with the prospect of the capture of Malaga #1 into defendant's bankruptcy estate in December of 2006, Investments Unlimited, represented by defendant's housekeeper, Cintrón, transferred the property to Santiago and Lebrón for $1,100,000. Additional evidence indicated that the $410,000 down payment was split into checks made out to four individuals who never received any actual pecuniary gain from the corporation. Based on the timing, nature and circumstances surrounding the disbursement of the $410,000 down payment for the property described above, the jury could infer fraudulent intent on the part of defendant. Thus, the Court **DENIES** defendant's request for acquittal as to Count Six based upon a lack of evidence as to fraudulent intent.

Further, at trial, the United States presented evidence that, in June of 2006, defendant negotiated the purchase of Laguna V-PHP on behalf of Investments Unlimited. GE 16 & 16A. Upon reaching an agreement with the seller of the property, defendant provided the real estate agent with a good faith offer and check in the amount of $8,750 from the Investments Unlimited account and executed a draft and an original of the sales contracts for the property. **ECF No. 289** at 16-24; GE 16, 16A & 17. On July 14, 2006, defendant deposited $190,000 in cash into the Investments Unlimited account at R&G Bank, purchasing managers checks to close the transaction. GE 23-4 at 84. On that same day, co-defendant executed the deed to purchase the Laguna V-PHP on behalf of Investments Unlimited. GE 19A. The checks purchased by defendant on behalf of Investments Unlimited were used to pay the seller and the outstanding mortgage on the property. **ECF No. 289** at 7.

Further, the United States adduced evidence that defendant and co-defendant, acting on behalf of Investments Unlimited, purchased El Convento and Antonsanti for $420,000 and $68,000 respectively. GE 10 & 11. In August of 2006, co-defendant, Astrid Colón, contacted attorney Gloria Cardona-Aldarondo ("Attorney Cardona"), informing her that a corporation was purchasing land and properties and requesting that Attorney Cardona preside over some closings. **ECF No. 277** at 117-118 & 130. On August 22, 2006, defendant deposited $490,000

in cash into the Investments Unlimited account at R&G Bank, purchasing two managers checks, one for $399,000 for the purchase of El Convento and the other for $68,000 for the purchase of Antonsanti.  GE 23-4 & 23-6.  Two days later, co-defendant, acting as President of Investments Unlimited executed the deed for the purchase of El Convento.  GE 10.  Two days after that, co-defendant, again acting as President of Investments Unlimited, executed the deed for the purchase of Antonsanti. GE 11.

Reviewing the evidence presented to the jury, the Court finds that the jury could properly conclude that defendant deposited cash into the Investments Unlimited account with the purpose of purchasing the El Convento, Antonsanti and Laguna V-PHP properties without affecting his bankruptcy proceedings.  Because defendant failed to disclose his full ownership of Investments Unlimited to the Bankruptcy Court, the Chapter 7 Trustee was unable to administer the shares of Investments Unlimited, which had acquired these three properties from undisclosed funds deposited by defendant.  Accordingly, the Court **DENIES** defendant's motion for acquittal based upon a lack of evidence of fraudulent intent relating to Counts Three, Four and Five.

**C.     Count Seven – Money Laundering**

Next, defendant contests the sufficiency of the evidence relating to the effect on interstate commerce, illegal source and intent elements of the money laundering charge.  **ECF No. 331**.

In order to sustain a money laundering conviction under 18 U.S.C. §1956(a)(1)(B)(I), the United States must prove beyond a reasonable doubt that (1) defendant knowingly conducted a financial transaction; (2) defendant knew the transaction involved funds that were the proceeds of some form of unlawful activity; (3) the funds involved were in fact the proceeds of a specified unlawful activity; and (4) defendant engaged in the financial transaction knowing that it was designed in whole or in part to conceal or disguise[11] the

---

[11]  The United States may prove the purpose element by either direct or circumstantial evidence. *United States v. Hall*, 434 F.3d 42, 50 (1st Cir. 2006).

nature, location, source, ownership, or control of the proceeds of such unlawful activity. *United States v. Cornier-Ortiz*, 361 F.3d 29, 37 (1st Cir. 2004) (citing 18 U.S.C. §1956(a)(1)(B)(I) and *United States v. Martínez-Medina*, 279 F.3d 105, 115 (1st Cir. 2002)). Bankruptcy fraud is expressly included among the predicate crimes which produce "proceeds" that may be money laundered. *United States v. Castellini*, 392 F.3d 35, 45 (1st Cir. 2004) (citing 18 U.S.C. §1956(c)(7)(D)).

> For the purposes of the money laundering statute, a "financial transaction" is
>
> > (A) a transaction which in any way or degree affects interstate . . . commerce
> > > (I) involving the movement of funds by wire or other means or
> > > (ii) involving one or more monetary instruments, or
> > > (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or
> > (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

18 U.S.C. §1956(c)(4). The First Circuit Court of Appeals has clarified that "[a] minimal effect on interstate commerce is sufficient to support a conviction" under the statute. *United States v. Owens*, 167 F.3d 739, 755 (1st Cir. 1999).

At trial, the United States adduced evidence that three checks purchased by Santiago and Lebrón, totaling $410,000, were deposited in the Investments Unlimited account. GE 23-2 & 36. These checks matched the amounts contained in the deed by which Malaga #1 was transferred to Santiago and Lebrón by Investments Unlimited. *Compare* GE 23-2 & 36 *with* GE 12. The evidence presented by the United States was further bolstered by defendant's entry into evidence of the two checks used by Santiago to purchase the managers checks used to complete the transaction, which contained notations that the funds were to be used for the purchase of real property. Defense Exhibits ("DE") IV & V. The Court finds that, based upon this evidence, the jury could have found beyond a reasonable doubt that the checks deposited into the Investments Unlimited account were the proceeds of the sale of Malaga #1, whose transfer, as the Court determined above, resulted in bankruptcy fraud in the form of a fraudulent concealment. Additionally, as the United States presented evidence that R&G bank

is a FDIC-insured institution and that the subject transaction involved the purchase and sale of real estate, the interstate nexus requirement was met. **ECF No. 291** at 25; GE 12, 23-2 & 36; *see e.g. United States v. Peay*, 972 F.2d 71, 74-75 (4th Cir. 1992) (establishing that the deposit and disbursement of proceeds through an FDIC-insured institution is sufficient to establish the requisite nexus); *United States v. Leslie*, 103 F.3d 1093, 1102 (2d Cir. 1997) (finding that a connection with a real estate business is sufficient to support the nexus and find that a financial transaction within the meaning of the statute has occurred).

Further, there was sufficient evidence to show that defendant knew the deposits were the proceeds of unlawful activity and that defendant designed the transaction to conceal the ownership of the proceeds of the sale of Malaga #1.  At the time when the sale of Malaga #1 to Lebrón and Santiago took place, defendant was aware that the Chapter 7 Trustee sought to recover Malaga #1 on behalf of the bankruptcy estate and quickly acted to transfer the property using a convoluted series of financial transfers to persons who testified at trial that they ultimately received no actual financial gain from the transfer of Malaga #1 and had no interest in such transaction.  **ECF No. 297** at 25-26; **ECF No. 297** at 95-108; **ECF No. 293** at 61-66; **ECF No. 297** at 54-58; GE 1-1, 23-2, 23-3, 23-5 & 36.  The use of these third parties with no actual financial interest in Investments Unlimited or in the sale of Malaga #1, along with defendant's previous testimony at the "341 Meeting" that Investments Unlimited was owned by several Chicago shareholders, also supports the conclusion that defendant designed the transaction to conceal the nature, location, source and ownership of the proceeds from the sale.  GE 2 at 54-56.  Accordingly, the United States presented sufficient evidence as to each element of money laundering for a reasonable jury to find beyond a reasonable doubt that defendant violated the statute.   Consequently, the Court **DENIES** defendant's request for acquittal as to Count Seven.

      **D.**    **Count One – Conspiracy**

Finally, the Court addresses defendant's argument that the United States provided insufficient evidence as to the conspiracy count as a criminal conspiracy may not be proven

CRITICAL

solely by a family relationship or close association and as the United States adduced no direct proof of agreement between defendant and co-defendant.[12]  *See* **ECF No. 331**.

In order to sustain a conspiracy conviction, the United States must have set forth "direct or circumstantial evidence which establishes beyond a reasonable doubt that the defendant and one or more coconspirators intended to agree and to commit the substantive criminal offense which was the object of their unlawful agreement." *United States v. Tejeda*, 974 F.2d 210, 212 (1st Cir. 1992) (internal quotations omitted).  The agreement may be either express or tacit and its existence "may be inferred from a development and collection of circumstances." *Id.*; *see also United States v. Escobar-de-Jesús*, 187 F.3d 148, 175 (1st Cir. 1999). Further, an overt act in furtherance of the conspiracy must be proven.  *See* 18 U.S.C. §371.

Contrary to defendant's assertion that the only ties between defendant and co-defendant, Astrid Colón,  were familial, at trial, the United States set forth evidence showing that co-defendant acted as President of Investments Unlimited and executed the deeds for the Laguna V-PHP, El Convento and Antonsanti, paying with the checks purchased by defendant. **ECF No. 277** at 117-18; **ECF No. 289** at 7; GE 10, 11, 19A, 23-23-4 & 23-6.  Thus, the evidence shows that co-defendant and defendant were both actively involved in the real estate transactions which underlie the charges of fraudulent transfer charged in Counts Three through Five.  Further, co-defendant acted as defendant's attorney during his bankruptcy proceedings.  *See* GE 1-1.  Both she and defendant filed and/or signed the bankruptcy forms which failed to include defendant's ownership of Investments Unlimited, despite co-defendant's role as President of the corporation.  GE 1-2, 1-3, 9–1, 10, 11, 19A and 37. Additionally, co-defendant appeared as defendant's counsel at the "341 Meeting" where defendant falsely testified under oath, denying the ownership of Investments Unlimited and his relationship to the company.  GE 2.  Furthermore, evidence at trial showed that it was co-defendant who prepared most of the deeds for the sales transactions and secured the

---

[12]  The Court already disposed of defendant's additional argument relating to the 2008 Settlement Agreement, *supra*.  Further, the Court finds no merit in defendant's vague allegations of hearsay, which fail to even identify the evidence to which defendant objects.

cooperation of other fellow attorneys, who acted as notaries.  During this time frame, it was known to both defendants that defendant Edgardo Colón was the sole owner of Malaga #1, continued to reside there and held family gatherings at this address.  Any claim of mistake or accident by co-defendant was greatly weakened by the evidence submitted regarding similarities between Astrid Colón's prior bankruptcy claims and proceedings and defendant's subsequent bankruptcy.  GE 29-1, 29-2, 29-3, 29-4 & 29-5.  Thus, from the evidence presented, a reasonable jury could have concluded that defendant and co-defendant conspired together to conceal the ownership of Investments Unlimited and Malaga #1[13] from the Bankruptcy Trustee in violation of 18 U.S.C. §152 and conducted the charged fraudulent transfers in violation of 18 U.S.C. §152(7).  Accordingly, the Court also **DENIES** defendant's motion for acquittal as to Count One, the conspiracy Count under 18 U.S.C. §371.

## V.     Conclusion

For the reasons set forth above, the Court finds that the guilty verdict returned as to Counts One through Seven of the Indictment was supported by sufficient and admissible evidence to sustain the same and that defendant was not entitled to a jury instruction regarding entrapment by estoppel or selective prosecution.  Thus, defendant's Motion for Acquittal under Rule 29 (**ECF No. 331**) is **DENIED**.

**IT IS SO ORDERED.**

At San Juan, Puerto Rico, on this 5th day of September, 2013.

**S/AIDA M. DELGADO-COLÓN**
**Chief U. S.  District Judge**

---

[13]  This evidence could indicate to a reasonable jury that co-defendant conspired with defendant to perform the pre-petition transfer of Malaga #1 to Investments Unlimited as well as the subsequent concealment of the true ownership of Investments Unlimited.